**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:22-CV-23384-BLOOM/DAMIAN

AUGUSTINA SANTIAGO,

     Plaintiff,

v.

UNIVERSITY OF MIAMI,

     Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S**
**MOTION TO DISMISS AMENDED COMPLAINT WITH PREJUDICE [ECF NO. 19]**

THIS CAUSE is before the Court on Defendant, University of Miami's (the "University" or "Defendant"), Motion to Dismiss Amended Complaint with Prejudice, filed December 16, 2022. [ECF No. 19 ("Motion")]. This matter was referred to the undersigned for a Report and Recommendation by the Honorable Beth Bloom, United States District Judge. [ECF No. 21]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered the parties' memoranda [ECF Nos. 19, 20, 22], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. The undersigned also heard from the parties, through their counsel, at a Zoom motion hearing on March 1, 2023. For the reasons that follow, the undersigned recommends Defendant's Motion be granted in part and denied in part.

## I.    BACKGROUND FACTS

The following facts are based on the allegations in the First Amended Complaint [ECF No. 15 ("FAC")], which are taken as true for purposes of considering the Motion to Dismiss.

*Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). This is an action for violations of Title 42, United States Code, Section 1981, based on the University's alleged race-based discrimination and retaliation against Plaintiff, Augustina Santiago ("Ms. Santiago" or "Plaintiff"). Ms. Santiago is a black female of Nigerian descent. FAC at ¶ 13. Ms. Santiago alleges that during her employment with the University, she was the only black female of Nigerian descent working in her office. *Id.* at ¶ 19. Prior to her resignation, Ms. Santiago was a Clinical Program Coordinator for the University's Department of Anesthesia and the Assistant to Dr. Steven Gayer. *Id.* at ¶ 14. Ms. Santiago alleges that Dr. Gayer discriminated against her because of her race. *Id.* at ¶ 18. She alleges she made almost weekly complaints to the University's Human Resources ("HR") concerning Dr. Gayer's discriminatory treatment of her and that HR did nothing to address her complaints. *Id.* at ¶¶ 22-23. Instead, Ms. Santiago alleges, the University allegedly made excuses for Dr. Gayer's behavior and provided Ms. Santiago with tips for getting along with him. *Id.* at ¶ 50.

Ms. Santiago provides several examples of Dr. Gayer's allegedly discriminatory treatment in the FAC. For example, Ms. Santiago alleges that Dr. Gayer expected her to translate for patients whom he believed were "related" to her because she is a black female of Nigerian descent. *Id.* at ¶ 20. Ms. Santiago also alleges that Dr. Gayer told other employees that scam emails they received from someone claiming to be royalty from Africa were from her relative because they are both black. *Id.* at ¶ 45. And Ms. Santiago alleges that Dr. Gayer yelled at her on multiple occasions and denied her request to move from a high traffic area where it was difficult to work to a "quieter workplace." *Id.* at ¶¶ 21, 25.

According to Ms. Santiago, Dr. Gayer treated her differently than other similarly situated employees by routinely disciplining and ridiculing her for her performance while not

disciplining other employees who performed the same work or committed worse infractions. *Id.* at ¶¶ 24, 29, 31. Dr. Gayer allegedly also disciplined Ms. Santiago for taking approved time off work but did not discipline another employee who took time off without approval. *Id.* at ¶¶ 27-28.  Similarly, Ms. Santiago alleges that Dr. Gayer "failed to allow" her to take paid leave and time off under the same policies other similarly situated white employees were allowed to use; isolated her because of her race by, for example, participating in birthday celebrations for other employees but not for her; and forced her to stay at work when there were no remaining patients in the office while allowing other employees to leave early. *Id.* at ¶¶ 41, 46.

Ms. Santiago claims to have made "countless complaints" to HR about Dr. Gayer's treatment of her, including complaints that Dr. Gayer subjected her to racial discrimination. *Id.* at ¶ 33. Ms. Santiago alleges that instead of remedying the situation, HR informed Dr. Gayer of Ms. Santiago's complaints against him and allowed him to make false complaints about her work performance. *Id.* at ¶¶ 22, 34. Ms. Santiago alleges that upon learning about her complaints against him, Dr. Gayer retaliated and made Ms. Santiago's working conditions more intolerable. *Id.* at ¶ 34. For example, Ms. Santiago alleges that Dr. Gayer continued to "violently yell" and "scream" at her after learning about her complaints to HR about him. *Id.* at ¶ 35.

Ms. Santiago alleges that she informed HR that "due to the treatment of Dr. Gayer, she was concerned about losing her job and her health," and that she would rather "find a new position within the University" than quit but that the University took no remedial action. *Id.* at ¶ 36. In February 2020, Ms. Santiago resigned, allegedly due to Dr. Gayer's ongoing

discrimination against her, his retaliatory behavior toward her, and the University's refusal to take action to protect her. *Id.* at ¶ 37.

## II.    PROCEDURAL HISTORY

On October 18, 2022, Ms. Santiago filed the original Complaint against the University. [ECF No. 1]. The University filed a Motion to Dismiss the original Complaint on November 18, 2022 [ECF No. 10], and on December 2, 2022, Ms. Santiago filed the FAC [ECF No. 15]—mooting the Motion to Dismiss. *See* ECF No. 16 (Order denying Motion to Dismiss as moot). The FAC is the operative pleading and sets forth two counts alleging violations of Title 42, United States Code, Section 1981: Count I, discrimination; and Count II, retaliation. *See* FAC at 10-11.

On December 16, 2022, the University filed the Motion to Dismiss the Amended Complaint now before the Court seeking dismissal of the FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [ECF No. 19]. Ms. Santiago filed her Response on December 30, 2022, and the University filed a Reply on January 6, 2023 [ECF Nos. 20, 22].

The Motion is fully briefed and ripe for adjudication.

## III.    APPLICABLE LEGAL STANDARDS

### A.    *Rule 12(b)(6) Motion To Dismiss*

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not

satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted."
Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim
for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
A claim is facially plausible when the plaintiff pleads factual content that allows a court to
draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not require detailed factual allegations, but
"requires more than labels and conclusions . . . [and] a formulaic recitation of a cause of
action's elements will not do." *Twombly*, 550 U.S. at 555.

In considering the University's Motion to Dismiss, the Court views the FAC in the
light most favorable to Ms. Santiago and accepts all of its well-pleaded allegations as true.
*Ziyadat*, 3 F.4th at 1296. At this stage, the question for the Court is not whether Ms. Santiago
will ultimately prevail but whether she is entitled to offer evidence to support her claims.
*Twombly*, 550 U.S. at 563 n.8. Courts will not grant a Rule 12(b)(6) motion to dismiss "unless
it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim
which would entitle [her] to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004)
(quoting *Conley*, 355 U.S. at 45–46) (alterations added).

A court considering a Rule 12(b)(6) motion is generally limited to the facts contained
in the complaint and attached exhibits, including documents referred to in the complaint that
are central to the claims. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009);
*see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A]
document outside the four corners of the complaint may still be considered if it is central to

the plaintiff's claims and is undisputed in terms of authenticity") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

    **B.**    *42 U.S.C. § 1981*

    Section 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). For purposes of this Section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *Id*. § 1981(b).

    In discrimination and retaliation cases, courts usually apply the framework laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which requires a plaintiff to first establish a *prima face* case for her claims. A plaintiff may establish a *prima facie* claim of discrimination under Section 1981 by showing that she: (1) belongs to a protected class, (2) was subjected to an adverse employment action, (3) was qualified to perform the pertinent job; and (4) was treated less favorably by her employer than "similarly situated" employees outside the protected class. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc) ("*Lewis I*").[1] To establish a *prima facie* claim of retaliation under Section 1981, a plaintiff must show that: (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) the adverse employment action was causally connected to her protected activity. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing *Burlington Northern & Santa Fe Ry.*

---

[1] Claims under Section 1981 are subject to the same analytical framework as claims under Title VII. S*ee Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1325 n. 14 (11th Cir. 2011).

*Co. v. White*, 548 U.S. 53 (2006)). With regard to the third element (causation), the plaintiff must allege that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

However, as explained in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 511 (2002), a plaintiff need not satisfy the *McDonnell Douglas* framework at the pleading stage in order to state a discrimination or retaliation claim. *Zachary v. Comprehensive Health Mgmt., Inc.*, 8:12-CV-530-T-33AEP, 2012 WL 3264899, at *2 (M.D. Fla. Aug. 9, 2012). This is because *McDonnell Douglas's* burden-shifting framework is an evidentiary standard, not a pleading requirement. *Swierkiewicz*, 534 U.S. at 510. *See also id.* at 550 (holding that an employment discrimination plaintiff need not plead a *prima facie* case of discrimination). Nevertheless, "the ordinary rules for assessing the sufficiency of the complaint [still] apply." *Id.* at 511; *see also Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) ("Although a Title VII complaint need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case, it must provide enough factual matter (taken as true) to suggest intentional race discrimination."); *Surtain v. Hamlin Terrance Found.*, 789 F3d 1239, 1246 (11th Cir. 2015). In other words, an employment discrimination plaintiff must allege the necessary *prima facie* elements but is not required to satisfy the *McDonnell Douglas* burden shifting analysis. *Zachary*, 2012 WL 3264899, at *2 (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010)).

With these standards in mind, the undersigned turns to the issues raised in the University's Motion.

## IV.   ISSUES RAISED BY THE PARTIES

The University argues, as a threshold matter, that Ms. Santiago's claims are time-barred by the statute of limitations. Mot. at 6. The University also argues that Ms. Santiago fails to plausibly allege the requisite elements of either of her claims. *Id*. Specifically, the University asserts that both of Ms. Santiago's claims fail to allege an adverse employment action. Mot. at 9-12. The University also asserts that a portion of Ms. Santiago's claims are premised on discrimination based on her national origin, not her race, and that the Court should dismiss such allegations of discrimination because claims for national origin discrimination are not cognizable under Section 1981. *Id*. at 12-13. As to Ms. Santiago's specific claims, the University argues that Ms. Santiago's claim for race discrimination (Count I) fails to plausibly state a claim because it fails to show that Ms. Santiago and comparator employees are similarly situated in all relevant respects. *Id*. at 13-15. And the University contends that Ms. Santiago's claim for retaliation (Count II) fails because it is devoid of allegations showing the requisite temporal or causal connection between Ms. Santiago's alleged complaints and an adverse employment action. *Id*. at 15-16.

In response, Ms. Santiago argues that her claims are timely and that the FAC sufficiently alleges that she suffered several adverse employment actions. *See* Resp. at 2-14. She also asserts that the FAC does not include a claim for national origin discrimination such that the University's arguments concerning such claims are inapplicable. *Id*. at 7 n.3. As to her claim for race discrimination, Ms. Santiago contends that the University's comparator arguments are not appropriate at the motion to dismiss stage, but that, nevertheless, the FAC sufficiently alleges she was treated differently than other similarly situated employees outside of her protected class. *See id*. at 14-17. And with regard to her retaliation claim, Ms. Santiago

asserts that the FAC plausibly alleges all the requisite elements for her claim, including allegations that establish causation. *Id*. at 18-20.

## V.    DISCUSSION

The undersigned first addresses the University's statute of limitations argument before turning to its arguments directed at the sufficiency of Ms. Santiago's pleading.

### A. *Statute of Limitations*

The University argues that Ms. Santiago's claims are time-barred by Florida's two-year statute of limitations, Section 95.11(3)(c), Florida Statutes. Ms. Santiago initiated this lawsuit in October 2022, approximately two years and eight months after she resigned in February 2020. Therefore, if the two-year statute of limitations applies, Ms. Santiago's claims are time-barred. Ms. Santiago contends that the applicable statute of limitations is the federal "catch-all" four-year statute of limitations for causes of action "arising under an Act of Congress" enacted after 1990. Resp. at 2–3.

Section 1981 does not contain its own statute of limitations. However, on December 1, 1990, Congress enacted a "catch-all" four-year statute of limitations for causes of action "arising under an Act of Congress enacted after [December 1, 1990]." 28 U.S.C. § 1658. The issue now before the Court is whether Ms. Santiago's Section 1981 claims arise under an Act of Congress enacted after December 1, 1990, such that the four-year limitations period applies.

The original version of Section 1981 was enacted in 1866 and provided, in relevant part, that "all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory. . . to make and enforce contracts. . . as is enjoyed by white citizens." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 372, (2004) (citing § 1 of the Civil

Rights Act of 1866, 14 Stat. 27). In 1981, the Supreme Court, in *Patterson v. Mclean Credit Union*, held that the statutory right "to make and enforce contracts" did not protect against harassing conduct that occurred after the formation of the contract, including "racial harassment relating to the conditions of employment." 49 U.S. 164, 171 (1989); *see also Jones*, 541 U.S. at 372-73. In response, in 1991, Congress added a new subsection to Section 1981 that defines the term "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thereafter, in *Jones*, the Supreme Court held that this 1991 amendment enlarged the category of conduct subject to Section 1981 liability, and, in that case, held that a group of plaintiffs' hostile work environment, wrongful termination, and failure to transfer claims "ar[ose] under" the 1991 amendment in the sense that the plaintiffs' causes of action were made possible by that amendment. *Jones*, 541 U.S. at 383. Therefore, the Supreme Court held that the "catch-all" four-year statute of limitations applied to the plaintiffs' hostile work environment, wrongful termination, and failure-to-transfer claims brought pursuant to Section 1981. *Id*. at 383-85.

Here, the University argues that Florida's two-year statute of limitations applies to Ms. Santiago's claims on grounds her claims did not arise under the 1991 amendment but, instead, were always available claims even before the 1991 amendment. Reply at 4-5. In support, the University relies on several cases that predate the 1991 amendment to Section 1981 to demonstrate that plaintiffs were able to assert discrimination and retaliation claims under Section 1981 even before the 1991 amendment. However, these cases predate the enactment of the federal "catch-all" four-year statute of limitations, and  the undersigned finds they are unpersuasive as to the issue at hand.

The only decision relied upon by the University that was decided after the enactment of the "catch-all" four-year statute of limitations is *Farrukh v. University of South Florida Board of Trustees*, No. 8:20-CV-73-T-33TGW, 2020 WL 6136642, at *1 (M.D. Fla. Sept. 30, 2020), *report and recommendation adopted*, 2020 WL 6134221 (M.D. Fla. Oct. 19, 2020). In *Farrukh*, the court applied Florida's two-year statute of limitations to the *pro se* plaintiff's Section 1981 claims. However, in *Farrukh*, neither the parties nor the court addressed the Supreme Court's decision in *Jones* or the catch-all four-year statute of limitations. Moreover, it is worth noting that in *Farrukh*, the court found that aside from the statute of limitations issue, the allegations in the *pro se* plaintiff's complaint were "vague and blatantly conclusory" and did not plausibly state claims for relief. *Id*. at *1, *4. Finally, the Middle District's decision in *Farrukh* is contrary to Eleventh Circuit authority and authority in this District supporting the application of the four-year statute of limitations to Section 1981 employment discrimination and retaliation claims. *See Baker v. Birmingham Bd. Of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008); *Odilance Silien v. Waste Mgmt., Inc. of Fla.*, No. 22-CV-81531-WPD, 2022 WL 17685507, at *2 (S.D. Fla. Nov. 10, 2022) (Dimitrouleas, J.). For the foregoing reasons, the *Farrukh* decision is unpersuasive.

Instead, the undersigned finds that *Jones* is determinative on the statute of limitations issue presented here. Consistent with *Jones*, the undersigned finds that Ms. Santiago's claims arise under an Act of Congress enacted after December 1, 1990, and, therefore, the four-year statute of limitations applies to Ms. Santiago's claims such that they are not time-barred.

Accordingly, the undersigned recommends the Court deny the University's Motion to Dismiss insofar as it is based on the statute of limitations.

**B. *Count I: Race Discrimination Under Section 1981***

The University seeks dismissal of Count I of the FAC, alleging race discrimination under Section 1981, for failure to state a claim. To survive dismissal of a Section 1981 race discrimination claim, a plaintiff must plausibly allege that she: (1) belongs to a protected class; (2) was subjected to an adverse employment action; (3) was qualified to perform the pertinent job; and (4) was treated less favorably by her employer than "similarly situated" employees outside the protected class. *Lewis I*, 918 F.3d at 1220-21. The University does not challenge the sufficiency of the allegations in the FAC regarding the first and third elements (that Ms. Santiago belongs to a protected class and was qualified to perform her job). Therefore, the undersigned addresses Defendant's arguments regarding the sufficiency of the allegations as to the remaining two elements.

**1. Whether Count I Sufficiently Alleges An Adverse Employment Action**

For purposes of a discrimination claim, a plaintiff must allege an adverse employment action that is a "tangible" employment action, meaning, an event that impacts the plaintiff's continued employment or wages, including: (1) terminations; (2) suspensions without pay; (3) pay raises or cuts; and (4) similarly significant events. *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861-62 (11th Cir. 2020) (citing *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883, 888 (11th Cir. 2005)).

The University contends that the only allegations in the FAC that reach the level of an adverse employment action are the allegations surrounding Ms. Santiago's alleged constructive discharge. *See* Mot. at 10. The University argues, however, that these allegations do not meet the high standard for establishing that a constructive discharge occurred. *See id*. In support, the University attaches Ms. Santiago's resignation letter, in which Ms. Santiago

states, "I appreciate the opportunities I have been given" and advises that her last day of employment would be a month later. *Id.* at 11-12, *see also* [ECF No. 19-1 (the resignation letter)]. The University argues that the contents of the letter undermine Ms. Santiago's claim that she was constructively discharged. *Id.*

In response, Ms. Santiago identifies the following alleged adverse employment actions set forth in the FAC: unfair workload, unwarranted disciplines, and constructive discharge. *See* Resp. at 9. She argues that when those actions are considered collectively, their combined total weight constitutes a sufficient adverse employment action to support her claim. *Id.* Ms. Santiago avers that the University's argument lacks supporting persuasive or controlling authority. *See id.* at 9-10. She also objects to the University's reliance on her resignation letter on grounds it is outside the scope of the pleadings. *Id.* at 10 n.6.

a)   *Unfair Work Assignments And Arbitrary Discipline*

Ms. Santiago alleges she was given unfair work assignments because she "was made to work in a room that was high in foot traffic" and was expected to translate to patients whom Dr. Gayer "believed were 'related'" to her. FAC at ¶¶ 20-21.[2] Ms. Santiago also alleges she was "routinely disciplined and ridiculed by Dr. Gayer for having not done something correctly, per his arbitrary standards," while other employees committed the same or worse infractions and were not disciplined. *Id.* at ¶¶ 24, 29, 31.

Ms. Santiago does not provide legal authority supporting a finding of an adverse employment action in a discrimination claim based on these or similar allegations. Instead, Ms. Santiago relies on dicta in the Eleventh Circuit's decision in *Graham v. State Farm Mutual*

---

[2] Ms. Santiago also briefly mentions in her Response to the Motion to Dismiss that she carried a heavier workload than those outside of her protected class. *See* Resp. at 13. The FAC, however, is devoid of any such allegations.

13

*Insurance Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999), in which the court observed that "actions such as undeserved negative job evaluations, demotions, disadvantageous transfers, or tolerations of harassment are actionable[.]" *Id.* (citations omitted); Resp. at 11. However, in the quoted sentence, the court was referring to conduct actionable "*under the retaliation clause* [of Title VII]." *Graham*, 193 F.3d at 1283 (emphasis and alteration added). *See also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998) (holding that Title VII's protection against retaliation extends to adverse actions which fall short of ultimate employment decisions). Given that the standard for an adverse employment action in a retaliation claim is lower than the standard applicable to discrimination claims, *Graham* and *Wideman* do not support Ms. Santiago's argument that these actions are actionable under a Section 1981 discrimination claim. *See Monaghan*, 955 F.3d at 861 (describing the different standards for discrimination and retaliation claims). Indeed, in another case relied upon by Ms. Santiago, the court explained that work assignment claims typically do not constitute adverse employment actions for discrimination claims and that discrimination claims can never be predicated "merely on [an] employer's allegedly unfounded criticism of an employee's job performance, where that criticism has no tangible impact on the terms, conditions or privileges of employment." *McConnell v. Univ. of Ala. Healthcare Sys.*, No. CV 16-0002-WS-N, 2016 WL 4132260, at *4 (S.D. Ala. Aug. 3, 2016) (citing *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800 (11th Cir. 2014), and *Davis v. Town of Lake Park*, 245 F.3d 1232, 1242 (11th Cir. 2001)).

Relying on *Wideman*, Ms. Santiago argues that even if these actions, standing alone, do not satisfy the adverse employment action element, when considered collectively, they are sufficient. Resp. at 13 (citing *Wideman*, 141 F.3d at 1456). She claims these actions may also

be considered as part of a "convincing mosaic" of circumstantial evidence to establish an inference of intentional discrimination. *Id*. at 14. However, the *Wideman* decision does not support her theory because, like in *Graham*, the claim at issue in *Wideman* was a retaliation claim, for which the adverse employment action requirement is more easily satisfied. *See Monaghan*, 955 F.3d at 861. Eleventh Circuit precedent requires that discrimination claims be based on tangible adverse employment actions. "Tangible employment actions consist of things that affect continued employment or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant *standing alone*." *Id*. at 860 (emphasis added). Ms. Santiago's allegations of unfair work assignments and arbitrary disciplinary actions do not rise to the level of a tangible employment action necessary to state a discrimination claim.

### b)  *Constructive Discharge*

Before turning to the sufficiency of the allegations regarding constructive discharge, the undersigned addresses the issue of whether the Court may consider Ms. Santiago's resignation letter at this stage of the proceedings.

### i)  *Consideration of Ms. Santiago's Resignation Letter*

Generally, a court will not consider a document outside the four corners of a complaint when determining a motion to dismiss unless the document is central to the party's claims and its authenticity is undisputed. *See Horsley*, 304 F.3d at 1135. In determining whether a document is central to a party's claims, courts consider such factors as: whether the claims depend on the document, *see Botero v. S. Fla. Pain & Rehab. Ctr. Corp. Inc.*, No. 12-20924-CIV, 2012 WL 3614329, at *3 (S.D. Fla. Aug. 21, 2012) (Moreno, J.); whether the document forms a "necessary part of [the plaintiff's] effort to make out [her] claim," *Day v. Taylor*, 400 F.3d

1272, 1276 (11th Cir. 2005) (alterations added);   whether the contents of the document are alleged in the complaint, *Gonzalez v. Watermark Realty Inc.*, No. 09-60265-CIV, 2010 WL 1299740, at *2 (S.D. Fla. Mar. 30, 2010) (Moreno, J.); *In re Silicon Graphics Inc. Sec. Litig*, 183 F.3d 970, 986 (9th Cir. 1999); and whether the document is referred to throughout the complaint. *See Infante v. Bank of America Corp.*, 468 F. App'x 918, 921 n.2 (11th Cir. 2012); *Leader Glob. Sols., LIC v. Tradeco Infrastructura, S.A.DE C.V.*, No. 1:15-CV-22130, 2016 WL 9526696, at *3 (S.D. Fla. Mar. 11, 2016) (Ungaro, J.); *Int'l Brotherhood of Teamsters v. Amerijet Int'l, Inc.*, 932 F. Supp. 2d 1336, 1344 (S.D. Fla. 2013) (Moreno, J.) (same); *Gonzalez*, No. 09-60265-CIV 2010 WL 1299740, at *2 (same). Moreover, if the document contradicts the general and conclusory allegations of the pleading, then the document governs. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (Williams, J.) (citing *Crenshaw v. Lister*, 556 F.2d 1283, 1284 (11th Cir. 2009)).

Here, Ms. Santiago's claims do not depend on her resignation letter, and the letter is not a necessary part of Ms. Santiago's effort to make out her claims. *See Botero*, 2012 WL 3614329, at *3; *Day*, 400 F.3d at 1276. Moreover, neither the resignation letter nor its contents are referred to in the FAC. *See Gonzalez*, 2010 WL 1299740, at *2. The undersigned is not persuaded by the University's argument that the contents of the letter wholly contradict Ms. Santiago's allegation of constructive discharge. Rather, the letter raises issues of fact regarding her resignation that can and should be addressed on summary judgment or at trial. Under the circumstances presented here, the undersigned finds it would be improper to consider the resignation letter at the motion to dismiss stage. Accordingly, the undersigned recommends the Court not consider the letter in its analysis of the University's Motion.

*ii) Sufficiency Of The Allegations*

The University does not dispute that a constructive discharge may constitute an adverse employment action for purposes of a discrimination claim. *See* Mot. at 10-12. Instead, the University argues that the allegations in the FAC do not meet the "high bar" for establishing constructive discharge. *Id.* at 10.

To allege a constructive discharge as a basis for a discrimination claim under Section 1981, a plaintiff must plausibly allege "that working conditions were so intolerable that a reasonable person in [her] position would have been compelled to resign." *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 798 (11th Cir. 2020) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001)).

Here, Ms. Santiago alleges she was subjected to the following working conditions:

> Plaintiff, on an almost weekly basis, made complaints against Dr. Gayer to Human Resources (HR) about his discriminatory treatment toward her. But instead of HR remedying the situation, Dr. Gayer was allowed to make false complaints to HR about Plaintiff's work performance. Plaintiff was able to disprove Dr. Gayer's allegations, but Defendant still did nothing to address Plaintiff's complaints against Dr. Gayer . . . . Plaintiff's working conditions became so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign, just as Plaintiff did. Plaintiff made countless complaints to HR about the discriminatory treatment from Dr. Gayer, yet no remedial action was taken. Plaintiff made complaints in writing, over the phone and in person with HR to no avail, including about the race discrimination to which she was being subjected to by Dr. Gayer. After Plaintiff complained to Defendant's Human Resources department about the racial discrimination to which she was being subjected to by Dr. Gayer, Defendant shared the information with Dr. Gayer and he would, in turn, retaliate against Plaintiff and make her working conditions even more intolerable. For example, Dr. Gayer would violently yell at, even scream at, Plaintiff throughout the entirety of her employment, and especially after he heard about her complaints about him to Defendant's HR Department. On several occasions, Plaintiff would break down crying or have panic attacks that would require her to have to step away from her desk. Plaintiff specifically informed HR that due to the treatment of Dr. Gayer, she was concerned about losing her job and her health, and did not want to have to quit but rather find a new position within the University. Defendant took no remedial action. In February 2020, Plaintiff was forced to resign due to Dr. Gayer's ongoing

> discrimination against her due to her race, his retaliatory behavior toward her whenever she complained about his discriminatory treatment to Defendant's HR Department, and due to Defendant's refusal to take remedial action to protect her. Plaintiff knew she would struggle financially after leaving this job, which is what occurred. Plaintiff lost her vehicle and almost lost her home due to financial hardship, yet she had no other choice but to resign.

Resp. at 9 (citing FAC at ¶¶ 22-23, 32-38).

In its Motion and Reply, the University does not cite any authority decided at the motion to dismiss stage that supports its contention that Ms. Santiago's allegations fall short of alleging a constructive discharge. This point was raised at the hearing on the Motion, and, shortly thereafter, the University filed a Notice of Supplemental Authority which included three decisions in which courts dismissed constructive discharge claims at the motion to dismiss stage. *See* [ECF No. 27]. However, these decisions are not persuasive. In each, the dismissal was not based on a determination that conduct like that alleged by Ms. Santiago is insufficient to allege a constructive discharge. Instead, the courts found that allegations in these cases were vague, conclusory, and lacked sufficient detail. *See Agostino v. Lee Cnty. Bd. of Cnty. Commissioners*, No. 2:17-CV-236, 2017 WL 2930807, at *3 (M.D. Fla. July 10, 2017) (granting dismissal of constructive discharge claim where plaintiff "makes the conclusory statement—with nothing more—that her work conditions were so intolerable that she had no choice but to resign"); *Griner v. City of Sanibel, Fla.*, No. 2:17-cv-282, 2017 WL 3782788, at *3 (M.D. Fla. Aug. 31, 2017) (granting dismissal where plaintiff "does not even allege that his work conditions were so intolerable that he had no choice but to resign"); *Moore*, 808 F. App'x at 798 (dismissing claim because allegations were vague and did not identify the alleged wrongdoers or reference specific dates and because the last alleged discriminatory act occurred three months before resignation).

In particular, the supplemental authority provided by the University does not address whether a reasonable person would have been compelled to resign where, like here, a supervisor allegedly violently yells and screams at the employee for the entirety of her employment, and the employer takes no action despite repeated complaints from the employee. *See* FAC at ¶ 35. *See also Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993) (holding that a material question of fact remained as to whether plaintiff's employment conditions were intolerable where plaintiff was subjected to vulgar comments by her immediate supervisor). At a minimum, the sufficiency of Ms. Santiago's allegations raises questions of fact regarding whether the alleged conduct rises to the level at which a reasonable person would see no choice but to resign.

Accordingly, the undersigned recommends the University's Motion to Dismiss be denied to the extent it is based on the failure to allege an adverse employment action to support the discrimination claim (Count I).

## 2. Treatment In Comparison To Similarly Situated Individuals Outside The Protected Class

The University argues that the FAC fails to identify a specific comparator and fails to allege sufficient facts to show that Ms. Santiago and her comparator "are similarly situated in all relevant respects." Mot. at 14.

To allege a *prima facie* claim of discrimination, a plaintiff must establish that she was treated less favorably than a similarly situated individual or individuals outside of her protected class. *Lewis I*, 918 F.3d at 1220-21. The Eleventh Circuit has held that "similarly situated" means "similarly situated in all material respects." *Id*. at 1224. "[P]recisely what sort of similarity the in 'all material respects' standard entails will have to be worked out on a case-by-case basis, in the context of individual circumstances." *Id*. at 1227. Although formal labels

regarding job title are unnecessary, a similarly situated comparator will have ordinarily engaged in the same basic conduct (or misconduct) as the plaintiff; been subject to the same employment policy, guideline, or rule as the plaintiff; shared the same supervisor as the plaintiff; and shared the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

The University contends that Ms. Santiago and her proffered "similarly situated" comparators must have the same employment history, work responsibilities, and superiors. Mot. at 14. And, according to the University, the FAC does not include these necessary allegations regarding comparators but, instead, simply identifies two persons who worked in different positions or departments than Ms. Santiago without alleging any facts regarding their employment histories or work responsibilities. *Id.* at 15.

Ms. Santiago responds that she does not need to identify a comparator to establish a *prima facie* discrimination claim. *See* Resp. 16-18. In support, she relies on the Eleventh Circuit's decision in *Lewis v. City of Union, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*"), in which the court found that "[e]ven without similarly situated comparators, the plaintiff will always survive summary judgment if he [or she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." (internal citations omitted). *See* Resp. at 15-18. She also contends that the University raises issues that should be addressed at the summary judgment stage, not at the motion to dismiss stage. *Id.* at 15. Nevertheless, Ms. Santiago argues that the FAC identifies her comparators, pointing to specific allegations in the FAC regarding other specific employees who were treated differently than she was. *Id.* at 14-15. Ms. Santiago argues that the allegations in the FAC establish that these comparators (1) engaged in the same basic conduct; (2) had been subject to the same employment policy, guideline, or rule; (3) shared the same supervisor; and (4)

shared Ms. Santiago's employment or disciplinary history. *Id.* at 16. According to Ms. Santiago, if taken as true, these allegations establish the comparators identified in the FAC are similarly situated to Ms. Santiago for the purpose of adequately alleging a *prima facie* race discrimination claim. *Id.* at 18 (citing FAC at ¶¶ 28-31, 39-46).

In its Reply, the University maintains that Ms. Santiago fails to identify a proper comparator. Reply. at 6-8.

The University's argument that Ms. Santiago is required to allege sufficient facts to show that she and her proffered comparators "are similarly situated in all relevant respects," (Mot. at 14), is not supported by the authority in the Eleventh Circuit. The relevant standard is not whether Ms. Santiago and her proffered comparators are similarly situated "in all relevant respects," but, instead, whether they are similarly situated "in all *material* respects." *Lewis I*, 918 F.3d at 1224 (emphasis added). This is a distinction with a difference. The applicable standard does not require that Ms. Santiago and her proffered comparators have the same employment history, work responsibilities, and superiors. Mot. at 14 (citing *Lewis I*, 918 F.3d at 1227-28). Rather, such considerations are simply "guideposts" for the Court's analysis, which is "worked out on a case-by-case basis, in the context of the individual circumstances." *Lewis I*, 918 F.3d at 1227.  As the Eleventh Circuit explained in *Lewis I*, a plaintiff does not need "to prove purely formal similarities—*e.g.*, that she and her comparators had precisely the same title." *Id.*  "Nor will minor differences in job function disqualify a would-be comparator." *Id.*

In the FAC, Ms. Santiago identifies two comparators. First, she compares Dr. Gayer's treatment of her to his treatment of another employee, "Elias l/k/u," a white male employee who, like Ms. Santiago, was a supervisor in the Anesthesia Department. FAC at ¶ 28. Ms.

Santiago alleges that Dr. Gayer would discipline her for taking time off from work, even if it was approved, but would never discipline Elias, who would "routinely take [time] off work without prior approval, leave his post during shift, leave work early, or simply go missing for hours." *Id.* at ¶¶ 27-28.  Ms. Santiago also alleges that Dr. Gayer routinely disciplined and ridiculed her for having done things incorrectly "per his own arbitrary standards" but that he did not discipline Elias when he committed the same, or much worse, infractions. *Id.* at ¶ 29. Additionally, Ms. Santiago alleges that when the coordinator for the Surgical Department, "Kimberly l/k/u," a white Hispanic female, filled in for Ms. Santiago, Kimberly was never disciplined for performing "the same work, for the same job, in the same manner" for which Ms. Santiago had been disciplined. *Id.* at ¶ 31.

The undersigned finds that these allegations sufficiently identify similarly situated individuals outside the protected class who were treated more favorably in order to withstand the University's Motion to Dismiss. *See Borgella v. Robins & Morton Corp.*, No. 1:21-CV-22789-JLK, 2022 WL 2104215, at *3 (S.D. Fla. June 10, 2022) (King, J.) ("Arguments regarding whether coworkers were actually similarly situated is [sic] again, best left until after discovery.").

Accordingly, the undersigned recommends the University's Motion to Dismiss be denied as to Count I to the extent it is based on Ms. Santiago's failure to allege that she was treated less favorably than a similarly situated individual outside of her protected class.

## C. *Count II: Retaliation Under Section 1981*

In Count II of the FAC, Ms. Santiago alleges the University retaliated against her for engaging in protected activity, the "exercise of her right to resist and oppose unlawful discrimination," by causing her constructive discharge. To state a *prima facie* retaliation claim

under Section 1981, a plaintiff must allege that: (1) she engaged in a statutorily protected activity; (2) she was subjected to an adverse employment action; and (3) the adverse employment action was causally connected to her protected activity. *See Goldsmith*, 513 F.3d at 1277 (citing *Burlington Northern*, 548 U.S. at 59).

The University does not dispute that Ms. Santiago has alleged that she engaged in a statutorily protected activity. Rather, the University argues the claim must be dismissed because the FAC fails to adequately allege constructive discharge, and, therefore, the FAC does not allege that Ms. Santiago was subjected to an adverse employment action. *See* Mot. at 10. The University also argues that the FAC fails to allege the necessary temporal or causal connection between Ms. Santiago's alleged complaints to HR and an adverse employment action. *Id*. at 16.

### 1.    Whether Ms. Santiago Plausibly Alleges Constructive Discharge

In the FAC, Ms. Santiago alleges that after she complained to HR about Dr. Gayer, the University did nothing to remedy the situation but instead shared her complaints with Dr. Gayer, who, in turn, retaliated against Ms. Santiago by making her working conditions "even more intolerable." FAC at ¶¶ 34, 50. Ms. Santiago alleges that Dr. Gayer's harassing and retaliatory conduct grew even worse, including violently yelling and screaming at her, after she complained about him and that this retaliatory conduct led to her constructive discharge. *Id*. at ¶¶ 50-51. As explained above, the undersigned finds that the FAC sufficiently alleges conduct that would cause a reasonable person to believe there was no option but to resign in order to support a claim of constructive discharge. And the University does not dispute that constructive discharge constitutes an adverse employment action. *See* Mot. at 10-12.

Accordingly, the undersigned finds that the University's Motion to Dismiss should be denied to the extent it is based on the failure to allege an adverse employment action to support the retaliation claim (Count II).

### 2.    Whether The FAC Sufficiently Alleges Causation

To establish causation, a plaintiff must allege that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Nassar*, 570 U.S. at 362. Importantly, and especially germane to this case, the causation requirement can be met "by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). However, "mere temporal proximity, without more, must be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). In determining the temporal proximity between statutorily protected activity and the adverse employment action, courts begin their calculation on the date the employer gains the knowledge of said protected activity. *See Raspanti v. Four Amigos Travel, Inc.*, 266 F. App'x 820, 823 (11th Cir. 2008).

The University argues that the FAC is devoid of any factual allegations showing the necessary causal connection between Ms. Santiago's alleged complaints to HR and an adverse employment action. Mot. at 16. Specifically, the University argues that the FAC fails to establish causation because it alleges that Ms. Santiago started complaining to HR shortly after she was hired in 2018 and continued until she was allegedly forced to resign in February 2020. *Id.* (citing FAC at ¶ 47). Therefore, the University contends there is no close temporal proximity between the statutorily protected activity—Ms. Santiago's complaints of race discrimination to HR—and the adverse employment action—her constructive discharge. *Id.*

Ms. Santiago responds that the causation element of her retaliation claim is easily satisfied because she identifies her complaint of race discrimination to HR made just two weeks prior to her constructive discharge. Resp. at 20. The University replies that Ms. Santiago fails to address Eleventh Circuit precedent indicating that temporal proximity is measured from the earliest alleged complaint and that when more than three months passes between the earliest complaint and the adverse action, no causal connection exists. Reply at 9.

While a complaint of discrimination made just two weeks prior to an alleged constructive discharge might otherwise be sufficient to satisfy the causation requirement, Ms. Santiago fails to acknowledge that her protected activities began much earlier. As alleged in the FAC, Ms. Santiago's complaints about Dr. Gayer started shortly after she was hired and continued until she was allegedly forced to resign in February 2020. FAC at ¶¶ 14, 47. Where, as here, multiple years separate a plaintiff's statutorily protected activity and her constructive discharge, there is a lack of a causal connection. *See, e.g.*, *Higdon v. Jackson*, 393 F.3d 1211, 1220–21 (11th Cir. 2004) (holding that a "three month period . . . does not allow a reasonable inference of a causal relation"). Due to the multiple year gap between Ms. Santiago's initial complaints and her resignation, the FAC does not satisfy the "very close" temporal proximity required to show causation. *See Clark County Sch. Dist.*, 532 U.S. at 273. Absent sufficient allegations of causation, the FAC fails to allege a *prima facie* claim of retaliation based on Ms. Santiago's alleged constructive discharge.

Accordingly, the undersigned recommends that the University's Motion to Dismiss be granted as to Ms. Santiago's retaliation claim and that Count II of the FAC be dismissed. Further, the undersigned finds that the lack of temporal proximity cannot be remedied by

amendment,[3] and therefore, because the retaliation claim is based only on Ms. Santiago's constructive discharge, the undersigned recommends that Count II be dismissed with prejudice.[4]

### D. *Whether The Allegations In The FAC Are Partially Based On National Origin Discrimination*

Lastly, the University argues that claims of discrimination based on national origin should be dismissed with prejudice because such claims are not cognizable under Section 1981. Mot. at 12-13. Ms. Santiago points out in her Response that she is not asserting a claim for national origin discrimination, but, instead, is claiming only race discrimination and retaliation under Section 1981. Resp. at 7 n.3.

Review of the FAC reflects that Ms. Santiago's claims are not based on national origin discrimination. Although Ms. Santiago references her Nigerian background in the FAC, her discrimination claim is based on race and not national origin.

Therefore, to the extent the University's Motion to Dismiss is based on grounds Ms. Santiago's claims are based on her national origin, the Motion should be denied.

### VI.   CONCLUSION

For the reasons set forth above, the undersigned finds that Count I of the FAC sufficiently alleges race-based discrimination in order to survive dismissal based on failure to

---

[3] Ms. Santiago did not request leave to amend.

[4] "[U]nder the federal procedural rules, the district court need not provide specific justification for dismissing with prejudice, as this is the default effect of a proper Rule 12(b)(6) dismissal." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 929 (11th Cir. 2016). *See also Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (holding that a district court is not required to grant a plaintiff leave to amend *sua sponte* when the plaintiff is represented by counsel and did not request leave to amend); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (holding that a district court need not allow an amendment where amendment would be futile (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

state a claim but that because Count II fails to sufficiently allege the required causal connection between the alleged adverse employment action and Ms. Santiago's protected activity, Count II, alleging retaliation under Section 1981, must be dismissed.

## VII.   RECOMMENDATION

Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Amended Complaint with Prejudice [ECF No. 19] be **GRANTED IN PART AND DENIED IN PART** and that Count II of the First Amended Complaint be **DISMISSED WITH PREJUDICE**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 6th day of April, 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Beth Bloom, *United States District Judge*
      Counsel of Record